Good morning, Your Honors, and may it please the Court. My name is Paul Alarcon, and I represent Petitioner as pro bono appointed counsel. I'm a third-year law student at Chatham University School of Law, appearing under the supervision of Professors Afsyabi, Davis, and Penfield. I'd like to reserve two minutes for rebuttal. The Court has jurisdiction because the termination order below was a final order of removal under law long, both because it was error as a matter of law under Lynn and because it was based on an unreinstatable expedite removal order and eliminated the only substantial impediment to the enforcement of that order. This circuit in law long laid down the rule that if an illegal order is judicially unreviewable but eliminates the impediment to removal, then it is effectively final. This rule applies to the instant case for two independent reasons. First, the termination order below was a per se violation of the Lynn rule that an immigration judge cannot terminate proceedings for lack of jurisdiction based on an unreinstated removal order. Second, the termination was illegal. What rule do you identify? The something rule? Yes, Your Honor. This Court's holding in Lynn, where the Court held that an immigration judge errs in terminating a proceeding for lack of jurisdiction based on an unreinstated removal order. I thought that that was our situation in Alcala. Well, Your Honor, in Alcala, the Court did not, the attorney for Alcala did not raise Lynn and so waived any argument under that rule. But we do have a holding in Alcala, and we did have a situation in which I believe they had not applied, the service had not applied for reinstatement of the notice of removal. Is that correct? That's correct, Your Honor. And it was certainly commented on by our courts. Are you suggesting that Alcala is dicta? Well, at least, Your Honor, that Alcala didn't conclude, yes, as far as that, the failure to raise the Lynn issue. I think Alcala noted that the stand in, this is a quote from Alcala at page 1,012. Alcala's standing attorney presented no argument in opposition to the government's motion that was for termination, nor did the attorney mention Alcala's standing application for permission to reapply for admission. Are you suggesting that Alcala is inconsistent with Lynn? No, Your Honor, that at least the Lynn issue wasn't raised before the court in Alcala. But we can't follow both Alcala and Lynn. Yes, Your Honor. The holding in Alcala is that if an expedited removal order is imposed prior to a petition for relief is sought or an NTA is filed, that the court can, that that petition, that original expedited removal order can be reinstated under a section 1231A5 of the United States Code and can bar the subsequent relief that's sought. And that's not the case that we have here. In this case, the expedited removal order was imposed after the NTA was filed and after the cancellation for application was sought. Thus, in Alcala, the jurisdiction had not yet vested with the immigration court when the expedited removal order was imposed. But in the instant case, jurisdiction had already vested. And these differences matter because although a jurisdiction vested with the court because why? When an NTA is filed, jurisdiction vests with the immigration court. So in Alcala, an NTA hadn't been filed when Alcala was expeditiously removed.  was imposed after an NTA had filed, and therefore, after the immigration court under 1229AA3 gained sole and exclusive vested jurisdiction. And that difference matters because under 1231A5, it's permissible for an expedited removal order to be reinstated and bar subsequent attempts to get relief, which is what happened in Alcala. But there's no authority for the proposition that that section can actually divest an immigration court of already vested and exclusive jurisdiction. You keep saying exclusive. What's the source of that? That's 1229A3. And what does that say? Well, it says that the immigration court, I don't have it directly in front of me, but it says that the immigration court gained, when an NTA is filed, the immigration court gets sole and exclusive jurisdiction over the immigration proceeding. Now, what happens? Why is it the court is expected to disregard or, in your view, compelled to disregard subsequent events? In this case, the departure and subsequent attempt to re-enter in the issuance of the ERO at some time later. Because, Your Honor, section 1231A5 does not say that, by its terms, it doesn't say that the court, that a subsequent expedited removal order can deprive a judge, an immigration judge, of that exclusive jurisdiction, which is already vested. And to hold otherwise would be to expand the statute from one which merely bars a properly removed alien from seeking subsequent relief into one which an immigration officer can unilaterally deprive an immigration judge of vested jurisdiction. And that goes against section 239.2c. Would you give me the reference to the exclusive jurisdiction again? Of course, Your Honor. It's section 1229AA3 of the United States Code. I'm sorry. 1229, I know sometimes we have parentheticals and we don't. Is that 1229A without a parenthetical or A with a parenthetical? A without a parenthetical, then A with a parenthetical, then 3. 3, thank you. Sure. So to construe the statute broadly to allow that unilateral divestment of vested jurisdiction by an immigration officer really goes against the whole point of section 239.2 of the Code of Federal Regulations. Are you saying that the – is your argument that the immigration officer who issued the expedited order at the border couldn't do that? In this case – That he was without authority, even though he found somebody illegally entering the country, he was without authority to do it because of an earlier proceeding that the alien had brought to cancel the immigration. The cancellation application? Yeah. Yes, Your Honor. When an alien is in a proceeding before the immigration courts, the petitioner argues that the statutory law doesn't allow an immigration officer to divest that jurisdiction. So he was supposed to let him into the country? Yes, Your Honor. He was informed and he knew that Galindo was in a immigration court proceeding, and I think he should have. But the important thing is that it can't be reinstated. That order can't be reinstated so as to deprive Galindo of the already existing cancellation petition. Perhaps it could be reinstated so as to deprive Galindo of some subsequent relief that he seeks. But under 1231A5, it can't retroactively go past when the expedited removal order was imposed and divest a court of vested jurisdiction. And there's good reason for thinking this, because not only He didn't even appear ultimately in the first proceeding. So he doesn't appear in the first proceeding. He leaves the United States. It's true for understandable reasons because he has a sick relative in Mexico. He has no right to come back to the United States. He stopped at the border, and you're saying that he had to be released into the United States so he could pursue his original proceeding, which he had never really pursued to begin with once it began. Your Honor, those proceedings occurred over a period of many years, and he did appear at every one of the proceedings. If you look at the record, at every proceeding, Galindo's present, and the immigration judge has a colloquy with Galindo. So he was there.  It was just taking its time, but it was ongoing. And but even if the court holds that it doesn't have jurisdiction, Petitioner requested to adopt the Kieser rule from the Second Circuit and remand the case. The Kieser rule holds that where a court in determining whether or not it has jurisdiction determines that there is legal error, which in this case would be under Linn under Section 1231A5, the court can remand for correction of those errors, and Petitioner requested to do so in this case. I think I'll save the rest of my time for rebuttal. Thank you. And we'll hear from the representative of the Attorney General. Good morning again, Your Honors. I'm Anthony DeCastro, representing the Attorney General in this particular case. Petitioner's case is controlled by this court's decision in El Cala, which dictates that this court lacks jurisdiction over the case. Because the immigration judge's order in terminating the removal proceedings is not a final order of removal. In El Cala, this court recommends So let me stop you there. I just want to know, what happens from here? Under the government's position, what happens to Mr. Galindo? How does he get all of this back before us? He waits until they institute a, until they reinstate the order? Yes, there's two ways that he can get before this court, or he can pursue review. First of all, this is important to note, that this decision is not a removable order. We cannot remove him on this order. He's still in the United States and- He's still in the United States and presumably either DHS will move to reinstate the order, as this court noted in El Cala, reinstatement is not automatic. It just doesn't spring to life. The department has to take actions, meet three required steps through its implementing regulations to reinstate the order, and then if the order is reinstated, as El Cala noted, he can come before this court and to whatever limited review this court has for reinstated orders, he can seek review on that. But it is quite limited, it is quite limited review, isn't it? On reinstatement, yes. The other alternative, and the second part of your answer to your question, Your Honor, is that the DHS could initiate new removal proceedings for whatever reason, discretionary, they don't want to reinstate, there's humanitarian reasons, it's really sort of prosecutorial discretion on how they're going to get him back into a removal proceeding, either reinstate or put him in 240 proceedings under AUSC 1229 or INA 240, and then put him in removal proceedings for that. For whatever reason, they determine that perhaps they don't want to reinstate. But reinstatement is probably in likelihood the way that the DHS would initiate, would reinstate the prior expedited removal order for him. But they don't have to. Why didn't they? I'm just curious. This case is being litigated. They haven't, Your Honor. I checked as a Not that I'm encouraging you to do it, but I'm just curious as to Well, I checked last week with the agency, and they haven't reinstated the prior order of removal, and it could be a number of reasons. Perhaps they're waiting for this litigation to complete, or they just haven't gotten around to reinstating the order yet. My guess is they're probably waiting for the litigation to complete and then take whatever actions they deem appropriate at their level of discretion, at the prosecutorial discretion stage. Has he made a strategic mistake by trying to wake you up? No, Your Honor, because he's already he's in the system that he's got an expedited removal order. Which is not being enforced. Well, they haven't taken the And he's not a member of the proceeding. They haven't taken steps to reinstate it, Your Honor, as of yet. I don't think that he's done anything to bring himself to the attention of DHS. I'm just curious. Yeah, I checked, Your Honor, and they have not done it yet. Well, what does reinstatement entail? I mean, the three findings have to be made. Is that a purely internal matter? Is there any kind of equivalent to an immigration judge? Yes, an immigration officer has to find, one, that there is a prior order of removal. Two, they have to make sure the identity, it does pertain to this particular individual, and you usually do that through fingerprints. And third, the last I've also forgotten what it was, but the impression I had is they're just this side of ministerial. I mean, they're the kind of things that could be done pretty expeditiously if somebody set their mind to doing it. And you say immigration officer. Who exactly is it that has to make the determination that would trigger the ability to remove the individual from the country? An immigration officer within the Immigration and Customs Enforcement Agency. Within DHS. Yes, Your Honor. So they're not going to go to an immigration judge. Nobody would be able to do it. He doesn't get reviewed by the board. And, in fact, that's what the board said in this particular decision, that they, you know, they don't review reinstatement orders. They don't review expedited removal orders. This Court has said it doesn't have any jurisdiction over expedited removal orders. Is there a proceeding or any kind of advance notice or anything in which the, what we'll call the alien can participate? Or do you just suddenly wake up one day and someone's knocking at the door and we have a reinstated order and you're out of here? No. He has to come in. He has to, they have to identify the alien. So they have to make sure they have the right alien. Many names are common. So the only way they usually do that is to make sure that the removal order that they have pertains to this particular alien that they're going to reinstate. And they usually do that by fingerprints, Your Honor. So he has to come in and he has to review the documents. And I believe he may even have to sign for receival of the reinstated order. Because, obviously, he has to get the reinstated order to be able to seek review in this Court within 30 days of that reinstated order. Now, one time he might have had a habeas relief as well, but he doesn't have any habeas any longer. Is that correct? He, on the expedited removal order, he may be able to still challenge that in habeas. The expedited removal order, he obviously cannot challenge that in this particular Court. This Court's precedent is clear. But he could challenge it under 8 U.S.C. 1252, I think it is, E2, that he can seek habeas relief on that. Again, that review on the habeas is extremely limited as well. Because Congress thought that expedited removal proceedings are a different creature. And it's the review is very limited in that particular instance as well. But in this particular instance, Alcala is clear. And this case is really indistinguishable by Alcala. The facts are. The one factual difference is the timing, which Petitioner's counsel pointed out. That is the only difference. But I submit that that difference is a difference, a distinction without really a difference. Because it doesn't affect this Court's ability to review the order. As this Court looked at Alcala, they first made a determination. We have to determine whether this is a final order of removal. We're not – and they concluded, based on its analysis, that it's not. It doesn't order removal whatsoever. It's not a removal order. So at the end of Alcala, the Court said we're not even going to reach the merits of whether or not the termination was proper or whether the ineffective In that case, it was an ineffective assistance of counsel that was sort of tagged on to the thing. So we cannot reach the merits, the Alcala Court said, because we don't have jurisdiction, because this is not a final order of removal, both under its precedent and its distinguished law and also the statute which defines removal, orders of removal, 8 U.S.C. 101-847-A, which states an order of removal is an administrative order determining whether an alien is removable, concluding that the alien is removable, or order of removal. This decision does none of those things. It's exactly the same order that was reviewed in Alcala, and this Court found that there's no final order for us to review, notwithstanding the fact that they raised in Alcala constitutional claims. In this particular case, alien is trying to raise questions of law, ultraviaries, actions, but this Court said very succinctly that the INA does not give the Court free-floating jurisdiction to review constitutional claims or questions of law. It stated we can only review these questions, constitutional questions or questions of law, if and only if there is a final order of removal. That's it. And if there's no final order of removal, there's nothing left for this Court to do except dismiss for a lack of jurisdiction. Now, if and when DHS, and I think this was also brought out in Alcala, that if and when the Immigration Service reinstates the order, then the alien may seek judicial review for whatever judicial review that is permitted under this Court's precedent and under the statutes that Congress enacted concerning the jurisdiction of this Court. Simply put, Your Honors, there is no administrative final order of removal that was issued in this particular case. And therefore, this case is not within a category of cases over which this Court has review authority under the statutory scheme as set forth by Congress in 8 U.S.C. 1252. Subject to the Court's questions, that concludes the government's argument. Roberts. One last argument. The question, not an argument question. Let's suppose that we thought that the I.J. pulled the trigger a little quickly here and probably should not have dismissed this. Is there going to be any opportunity for that judgment to be reviewed? If we don't get to review it here because of Alcala, and then the, and then the, and then ICE issues the reinstatement, and we have very limited review in the reinstatement, would there be any opportunity to review the I.J.'s judgment on that point? By this Court? Yes. No. But I would go back to the prelude of your question in that the Board did review the termination. There was an administrative review within the Board that found that the termination by the immigration judge was proper. It's not often in courts sort of guard this jealously that the courts get told that they cannot review a judgment by an agency, particularly on a point of law.  I see my time is up, Your Honor, but if I may briefly answer that question. That would be true, but the Alcala Court recognized, and the language is powerful in Alcala because they answered the dissent's point. They raised a constitutional issue. We should, we should, we should review it. We have to review it. And the majority opinion said, we, we plead guilty to the fact that we're letting the issue go, but we cannot exercise jurisdiction outside the scheme that Congress has set forth for us. And that is, it has to be, first and foremost, a final order of removal. If it isn't a final order of removal, there are a lot of decisions at the Board issues that are not final orders of removal. Bail revocation, visa petitions, motions to file late briefs. They issued decisions on all of these issues that are not reviewable by this Court because there is no final order of removal. And that is why the first section of 1252 limits the Court's review to final orders of removal. Before you even get to the rest of the, the limitations in 242 or 1252, that is discretionary decisions and criminal aliens and things of that nature. First and foremost, you must have a final order of removal. And that is what, why Alcala is right on point, controls the decision in this particular case and mandates dismissal for a lack of jurisdiction. Thank you, Your Honor. Rebuttal. Your Honors, I'll answer, or respond to two points that were made. If this order, the expedited removal order is reinstated, Alcala, Galindo will have no right to review beyond review of the ministerial, three ministerial findings which have to be made in order for him, for it to be reinstated at all. So. That's true in every case where you have an expedited removal order. And it seems to me what you're trying to do here is because prior to the expedited removal order, prior to his departing the United States and coming back illegally and being stopped at the border, he had brought an earlier proceeding that was unrelated to the expedited removal proceeding. And it seems to me that somehow you want to get from that preceding incomplete, that preceding incomplete proceeding, you want to get review of the expedited removal order. Is that what you're asking? No, the Galindo asks merely for review of the termination order itself. The Galindo won't have an opportunity to have that termination order reviewed if it's not reviewed by this court. And that termination order is the order which has errors according to Petitioner. I see my time. Please proceed because it is useful. The termination order, you're referring now to the order by the immigration judge terminating the proceedings. But why should that trump what's going on at a different track? It may be arguable as to whether it was a wise judgment for the immigration judge not to continue with the action that was pending in front of him because of the possibility of a separate reinstatement of the ERO. But what trumps the ERO? Why is it that the agency can't proceed with the expedited removal order, granted that Congress has given very limited review of that, but why is it that the pending existence of a prior proceeding prevents the agency from being able to enforce what clearly they'd be able to do if there had been no prior proceeding or if the person didn't have a prior history in the country? Because once the agency decides to bring an alien in front of an immigration judge and in front of a 240 proceeding, jurisdiction vests with that judge, and the agency can't eliminate that filing. 239.2 of the Code of Federations says clearly once the NTA is filed with the immigration judge, the immigration officer can't cancel that. So once jurisdiction is vested and once an alien has been dragged in front of an immigration judge, he has a right, a certain rights and expectations attached, including the ---- Except that Mr. Alcala here has altered his own legal status. It seems quite, it seems ---- Mr. Galindo. I'm sorry. Mr. Galindo has altered his own, has altered his own legal status by leaving, by leaving the country. And if we were to follow your argument, then Mr. Galindo did not even have to ask for permission to get probation to come back into the country after leaving to go see his father. He should have just gone, come back and said, the IJ has got exclusive jurisdiction. You have to let me back into the country. Or at least that you have to hold me and send me to the immigration judge when my hearing occurs. And further, the Congress has been very clear that in order to break your continuous presence here in America, it's, if you aren't gone for more than 90 days, it's presumed that you are continuously present in America for 90 days. Galindo was not gone for more than 90 days. No, but your argument is not, not only that there's a presumption, but that we have to let him back in. So why did he bother to ask for probation? Why did he bother to ask for probation? Yeah. He, he, if, if your argument is correct, he had a, he had a get-into-the-United-States free card. It seems a little odd, doesn't it? It's kind of a, sort of a strange. Well, I guess the consequences of not holding, not interpreting 1231A5 as Petitioner requests this Court to, would be that it allows the government to unilaterally, after jurisdiction is vested, to unilaterally deprive a court of jurisdiction. So I guess that leads to circumstances where the, what we call the Petitioner has done something to expose himself to the expedited removal order. I mean, if, if Mr. Galindo had never left the country, he could have, could not have been made subject to an expedited removal order. Well, I guess the answer has to be that there's no statutory law or regulations which suggest that in this sort of case, leaving for a few days to feel that you're dying father would constitute abandonment. So for these reasons, Petitioner requests that this Court find jurisdiction to find that the court's below error. Thank you. Thank you. We thank both counsel and counsel-to-be for the argument. I'll observe that this is not the first time I've heard arguments from students participating under the student practice rule, and almost invariably, the arguments given by the student practitioners teach lawyers some lessons as to how they should do it. Thank you very much. Thank you, both counsel. We'll proceed to the next case on this morning's calendar for argument, which is after the submitted cases of Avila-Medrano v. Holder and Garnica v. Estru will be Drew v. Kate.
judges: Clifton, Bybee,, Korman